Walter HEMBREE and Lola
Hembree, Appellants,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Oct. 4, 1976.

Ben Hooper, II, Newport, John F. Dugger, Morristown, for appellants.

R. A. Ashley, Atty. Gen., Richard Lodge, Asst. Atty. Gen., Nashville, Alfred C. Schmutzer, Jr., Dist. Atty. Gen., Sevierville, for appellee.

## OPINION

TATUM, Judge.

Appellants, Walter Hembree and his wife, Lola Hembree, and their son, Larry Hembree, were indicted in Cocke County for murder in the first degree. There was a joint trial that resulted in Walter Hembree being convicted of Murder in the Second Degree and sentenced to serve 10 years in the State Penitentiary. Lola Hembree was convicted of involuntary manslaughter and sentenced to 11 months 29 days in the County Jail and Larry Hembree was acquitted. We must reverse the convictions.

The evidence accredited by the jury was that on April 10, 1974, and prior thereto, Walter Hembree had an arrangement with a poultry company to catch chickens purchased by the company. All three appellants engaged in this activity and Glen Ball and the deceased, Jimmy Henderson, assisted them. These two young men had spent the previous night with the Hembrees, catching chickens, and they intended to catch chickens the night of April 10. Ball and Henderson were about 16 or 17 years old.

In the late afternoon on that date, these persons were all at the Hembree residence. Lola Hembree was in the back room taking a bath. Glen Ball went to Walter Hembree's automobile to get wirepliers. He found no wirepliers in the automobile but found a .22 caliber pistol and brought it back into the house and gave it to Walter Hembree, telling him, "Here is your ole gun before you get caught with it."

Walter Hembree was "waving" the gun around and Henderson told him that he had better put the gun down before he shot someone with it. Whereupon, Walter Hembree pointed the pistol at Jimmy Henderson and shot him in the chest. There had been no ill will or argument or difficulty of any kind between any of the parties prior to the shooting.

The deceased, Jimmy Henderson, walked outside to the road where he fell. He was alive when loaded into the automobile of Walter Hembree to be taken to a hospital. Larry Hembree was not in the room when the shooting occurred.

Lola Hembree, while still taking a bath, heard the shot fired but at first thought it was the television until she heard Larry Hembree scream. She put on a robe and went outside and assisted in placing deceased in the automobile. She was completely nude except for the robe. She was wearing no shoes.

Prior to leaving, Walter Hembree threw the gun outside into the yard.

Lola Hembree and Walter Hembree brought the deceased to Mim's Clinic in Newport. Lola Hembree was still dressed only in the robe. Walter Hembree went inside looking for nurses and Lola Hembree took the car and went back to her home which was about six miles away.

Ball and Larry Hembree started to the hospital in another automobile when Ball told Larry Hembree to "wait a minute". Ball went into the Hembree home and

found a nylon string. He made a loop in the string, found the pistol, hooked the loop of the string over the pistol handle and brought the pistol back into the house and laid it on a cushion on the couch. Larry Hembree was waiting outside.

Immediately after nurses were procurred at Mim's Clinic, Walter Hembree ran across the street to the Courthouse and told Sheriff Bobby Stinson that Jimmy Henderson had shot himself and that the gun was at his home.

Whereupon, the Sheriff deputized one Fred Barnes. Barnes and the Sheriff went in the direction of the Hembree home which was about six miles from town but met Lola Hembree coming back to town. The officers blocked the road and the Sheriff read Lola Hembree her *Miranda* rights and asked her why she left Mim's Clinic. She told them that she wanted to notify Jimmy Henderson's parents and to get a preacher to pray for Jimmy. She had clothed herself while at home. The Sheriff told Lola Hembree to follow them to her home, that they wanted to look for the pistol. They asked her if "she cared if we go in the house," and she replied in the negative. The officers searched the house and premises but did not find the pistol.

All of the Hembrees and Glen Ball were placed under arrest. Glen Ball then told the officers that he took the gun in the house with a string. The Sheriff asked Deputies Roger Stinson and Fred Barnes to accompany Ball back to the Hembree home to search for the nylon string and Larry Hembree consented to go for that purpose. Barnes, Roger Stinson, Larry Hembree and Ball then returned to the home where officers made a search and found a piece of nylon string under a pillow on the couch.

Subsequently, Glen Ball confessed to appellants' attorney, to officers and to the Juvenile Judge of Cocke County that he had shot Jimmy Henderson. He then repudiated this confession claiming that Lola Hembree and her son, Ricky, had threatened to kill him if he did not confess. Ball repudiated the confession in the office of the Juvenile Judge in the presence of the

Sheriff and Ball's father, who was a part-time Deputy Sheriff.

Appellants' proof was that Ball and Henderson were pitching the pistol back and forth to each other and that Walter Hembree was asleep on the couch and did not know of the shooting until it was over and that Ball had told several persons that he had accidentally shot Henderson. There was sharp conflict in the testimony and theories of the State and the defendants. There was evidence of many inconsistent prior statements made by each of the four surviving parties who were at the Hembree home when this tragic and unnecessary shooting occurred.

In the first two assignments of error, appellant states that there is no material or substantial evidence to support the verdict of the jury as to the defendant, Lola Hembree, and that the evidence preponderates against the verdict of the jury and in favor of her innocence. We must agree.

All of the evidence is that prior to the time the pistol was brought into the house, Lola Hembree went into a rear bedroom to take a bath and she remained there until after the fatal shot had been fired. The State says that we should sustain Lola Hembree's conviction as a principal (aider and abettor) on the following grounds: (1) That she had knowledge of the existence of the gun; (2) that she eagerly assisted in the disposition of the body; (3) that she went back to the Hembree home after taking the body to the hospital or clinic; (4) that she did not tell Jimmy Henderson's family of the shooting; (5) that she did not procure a preacher; and (6) that the gun was not found after Lola Hembree returned to the home.

The State relies on *Flippen v. State*, 211 Tenn. 507, 365 S.W.2d 895 (1963), in support of its contention that the conviction of Lola Hembree as a principal should be sustained. In the *Flippen* case, the defendant was a passenger in an automobile being driven at an excessive rate of speed and ran into the rear of another automobile knocking it into a lake and drowning a small boy. We will not detail the evidence here in the *Flippen*

case but it is sufficient to say that the Supreme Court, in affirming the conviction of Flippen for involuntary manslaughter, found that there was evidence that he was an actual participant in the crime. The Court, speaking through Justice Burnett, said:

"As we see it there must be some evidence of a participation in the crime before one can be convicted as an aider and abettor. By § 39–109, T.C.A., aiders and abettors are deemed principal offenders and may be punished as such. Before one can be thus convicted there should be some evidence, at least circumstantial, that the aider and abettor participates in the crime. This record contains some evidence and many circumstances of his participation. An excellent statement of what is required may be found in 16 C.J. § 112, page 125; 22 C.J.S. Criminal Law § 85." 365 S.W.2d 895, at 899.

■ Thus, we see that the Supreme Court in *Flippen v. State, supra,* recognized that in order to aid and abet another to commit a crime, it is necessary that accused in some way associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree. *Jenkins v. State,* 509 S.W.2d 240 (Tenn. Crim.App.1974).

T.C.A. Section 39–109, defining aiders and abettors, states as follows:

"39–109. *Aiders and abettors deemed principal offenders.*—All persons present, aiding and abetting, or ready and consenting to aid and abet, in any criminal offense, shall be deemed principal offenders, and punished as such."

■ There is no evidence that Lola Hembree could have known of or participated in the shooting. All of the evidence is to the contrary and we find absolutely no evidence upon which conviction of Lola Hembree could be predicated. Assignments I and II are sustained.

Assignments III and IV say that the evidence preponderates against the verdict of the jury and in favor of the innocence of the defendant, Walter Hembree and that under the evidence, the jury was not warranted in finding him guilty of second degree murder.

In *Hawkins v. State,* 527 S.W.2d 157, 160 (Tenn.Crim.App.1975), this Court said:

"The law in Tennessee is that all homicide is presumed to be malicious, and thus second degree murder, in the absence of evidence which would rebut the implied presumption. (Cases cited). To reduce the degree of the homicide the defense must prove an absence of malice, and a corresponding burden rests on the state to prove premeditation or some other ingredient to raise the degree of homicide. (Cases cited)

In *Gann v. State, supra,* the court stated the law in this manner:

'The law in Tennessee is that all homicide is presumed to be malicious, in the absence of evidence which would rebut the implied presumption. (Cases cited) Likewise, if a weapon is handled in a manner so as to make the killing a natural or probable result of such conduct, malice will be presumed from the use of the said weapon. (Cases cited) Thus, the proof of the use of deadly weapon is sufficient to sustain a charge of second degree murder unless it is rebutted by other facts and circumstances. (Cases cited)' "

■ It is true that the proof reveals no motive for this shooting. However, the evidence accredited by the jury does show that appellant, Walter Hembree, pointed the pistol directly at deceased and pulled the trigger without cocking it (double action). We think that the jury found that Walter Hembree committed an intentional assault on the deceased and purposely shot him and that the testimony of the State's witnesses is insufficient, as a matter of law, to rebut the presumption of malice. This was a jury question and the evidence supports a conviction for second degree murder.

■ A jury's verdict of guilty, approved by the Trial Judge, resolves all conflicts in favor of and establishes the State's theory of the case and replaces the presumption of innocence with one of guilt. A

guilty verdict will be disturbed only if the defendant shows that the evidence clearly preponderates against the verdict of guilty and in favor of the innocence of the accused. *McBee v. State*, 213 Tenn. 15, 372 S.W.2d 173 (1963). Assignments III and IV are overruled.

Complaint is made by appellants of an unresponsive statement made by the State's chief witness, Glen Ball, to a question asked him by appellant's attorney on cross-examination:

"Q. You, myself and Roger Stinson? And did you not tell Roger Stinson, on that occasion that you had that gun in your hands when it was discharged?

A. Yes Sir, then we . . . Roger Stinson and Bobby Bryant took me to Morristown and got a lie detector test."

Appellant then moved to strike the testimony about the lie detector test as not being responsive. The Attorney General then said, "He asked the question, Your Honor", and the Court said, "It was unresponsive". The Court then said, "Sustained".

The jury was then excused and appellant moved for a mistrial. The Court then stated that, "Almost every question and every answer has been disputed", and held the answer concerning the lie detector test to be spontaneous and denied the motion for a mistrial.

As before stated, the witness, Ball, had previously confessed and then retracted the confession. He was the only witness who testified at the trial that Walter Hembree shot the deceased and Walter Hembree introduced substantial evidence that Ball had shot the deceased. The weight to be given the testimony of Ball was crucial. It is true that Ball did not testify as to the results of the lie detector test, but he did say that he was accompanied by officers to Morristown to take the test and any reasonable person listening to his response would conclude that he said this to bolster his testimony, i. e., that he passed the test. The Trial Judge did not specifically instruct the jury any

further than to sustain the Motion to Strike.

▮ The results of a lie detector test are inadmissible in evidence and the circumstances surrounding the taking or not taking of such test is likewise inadmissible. *Grant v. State*, 213 Tenn. 440, 374 S.W.2d 391 (1964); *Marable v. State*, 203 Tenn. 440, 313 S.W.2d 451 (1958).

▮ The granting of a mistrial is in the discretion of the Trial Court where there is no abuse of that discretion. *Layman v. State*, 1 Tenn.Cr.App. 83, 429 S.W.2d 832 (1968); *Jones v. State*, 218 Tenn. 378, 403 S.W.2d 750 (1966).

In *Brown v. State*, 220 Tenn. 709, 423 S.W.2d 493 (1968), prejudicial and immaterial medical evidence was given against a defendant and he moved for a mistrial. The Supreme Court observed that if the jury were properly admonished and instructed, such error could not be prejudicial.

▮ However, in the case *sub judice*, we are not satisfied that this statement was not prejudicial. The proof was that either this witness or the appellant, Walter Hembree, shot the deceased and the jury's knowledge of a successful lie detector test probably served to bolster and give greater weight to this witness's testimony. In the light of all of the circumstances in this particular case, we do not believe that the prejudice was cured by the sustaining of the motion to strike and we are obliged to sustain Assignment V.

The Sheriff testified that Walter Hembree, after receiving his *Miranda* warnings, told him that the deceased had shot himself and then that he, Hembree, had thrown the gun into the yard. He said that Lola Hembree was present during this interrogation and at one point Lola Hembree told her husband, "Just hush, don't say nothing else". Whereupon Walter Hembree, "shut up". The next day, Walter Hembree repeated his previous statement to the Sheriff in the presence of the District Attorney General.

▮ Appellants complain of the Court admitting into evidence the statement made

by Lola Hembree to her husband admonishing him to speak no more and allowing testimony that he did not talk further on that day. This was merely a comment on the scope of the defendant's statements and not a reference to the refusal of the defendant to make any statement at all. The defendant, Walter Hembree, had made numerous statements prior to the time he was admonished by his wife and made statements thereafter. His subsequent statement constituted a waiver of his *Miranda* rights. *Bowling v. State,* 3 Tenn.Cr.App. 176, 458 S.W.2d 639 (1970). It is not prejudicial for an officer to say that after making a statement or answering a question the one being interrogated refused to make any other statement and to give the circumstances of his refusal, when the accused voluntarily repeated the same statement on the following day. This evidence was not prejudicial. Assignment of Error VI is overruled.

Appellants next complain that the Court erred in admitting evidence showing the result of the first search of the Hembree home when accompanied there by Lola Hembree. A suppression hearing was held in the absence of the jury and the Sheriff testified that Lola Hembree had given her consent and permission to make this search. The Court so found and the finding was supported by the evidence. The search was legal. *McCravy v. Moore,* 476 F.2d 281 (6th Cir.1973). Assignment VII is overruled.

The second search was made after Walter Hembree, Lola Hembree and their son, Larry Hembree, had been arrested. All three were in custody and the officers sought and obtained consent and cooperation from the son, Larry Hembree, without consulting with his parents, both of whom were readily available. We are now confronted with the question as to whether the consent of a son living with his parents is binding on the parents when the son and both parents are in custody and the parents are readily available to give or withhold their consent. No effort was made to obtain a search warrant.

The general rule seems to be that a son or daughter cannot waive the rights of a parent. *Davis v. U.S.,* 327 F.2d 301 (9th Cir.1964); *U.S. v. Linderman,* 32 F.Supp. 123 (D.C.E.D.N.Y.1940); *People v. Jennings,* 142 Cal.App.2d 160, 298 P.2d 56 (1956); *Padron v. State,* 328 So.2d 216 (Fla. App.1976).

The record does not show the age of Larry Hembree when he gave consent to this search but it does reflect that he could not have been more than 18 years of age. We have several cases holding that a husband's constitutional rights are not violated when a search is conducted with the permission of his wife. *Lester v. State,* 216 Tenn. 615, 393 S.W.2d 288 (1965); *McCravey v. State,* 2 Tenn.Cr.App. 473, 455 S.W.2d 174 (1970); *Luallen v. State,* 2 Tenn.Cr.App. 329, 453 S.W.2d 453 (1969); *McGee v. State,* 2 Tenn.Cr.App. 100, 451 S.W.2d 709 (1969). In *Kelley v. State,* 184 Tenn. 143, 197 S.W.2d 545 (1946), it was held that where there was not a good relationship between husband and wife as where the wife was angry at her husband and hostile toward him, she could not waive his rights. The cases where the waiver of the husband's rights by the wife has been sustained are all bottomed on the principle that husband and wife have equal rights to use or occupation of the premises and in these cases the absent spouse was not shown to be at home when his rights were waived. The rights of an 18 year old son to the use or occupation of the premises are not necessarily equal to the rights of use or occupation of his parents.

We hold that when parents are in custody of the law along with their son and are equally accessible to give or withhold consent to search, the consent and cooperation to a search by the son does not waive constitutional rights of his parents.

Recently, the Supreme Court of the United States in *U.S. v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), discussed the criteria concerning the validity of searches based upon third party consent. The rule was therein stated, at 94 S.Ct. at page 993;

". . . more recent authority here clearly indicates that the consent of one

who possesses *common authority* over premises or effects is valid as against the *absent,* nonconsenting person with whom that *authority* is shared." (Emphasis supplied)

Lola Hembree gave consent to the Sheriff to make the first search and she accompanied the officers while making this search. This did not amount to a continuing consent for different officers to make subsequent searches when she was not present. Assignment VIII is sustained.

Appellant complains that he was denied a fair trial because the members of the Cocke County Sheriff's Department who guarded the jury were defendants in a law suit filed by appellant, Walter Hembree, against the Sheriff's department officers in Federal Court for violation of his civil rights. Appellant cites no authority and there is no showing that prejudice resulted from custody of the jury by these officers. There is no showing that the officers in charge of the jury communicated with them in any manner inconsistent with their duties and no showing that the jury was influenced by them. *O'Brien v. State,* 205 Tenn. 405, 326 S.W.2d 759 (1958). This assignment must be overruled.

Appellants say that they were denied a fair trial by virtue of the fact that State witness, Deputy Fred Barnes, communicated with members of the jury during the course of the trial. There was a hearing concerning these facts on the Motion for a New Trial. Several witnesses testified for both the State and the defendants. After hearing the evidence, the Trial Judge found that Fred Barnes did not communicate with members of the jury. The findings of the Trial Judge are conclusive upon us unless we find that the evidence heard on the motion hearing preponderates against the lower court's judgment. *Nix v. State,* 530 S.W.2d 524 (Tenn.Crim.App. 1975); *Bratton v. State,* 477 S.W.2d 754 (Tenn.Crim.App.1971). We do not find that *the* evidence heard on the motion for a new trial hearing preponderates against the Trial Judge's finding. Assignment X is overruled.

Appellants contend that the Court erred in overruling their Motion for a Severance. The granting of a severance is a matter of discretion with the Trial Court and unless that discretion is abused, the action of the Trial Court will not be disturbed upon appeal. *Monts v. State,* 214 Tenn. 171, 379 S.W.2d 34, (1964). There is no showing that either defendant was prejudiced by the denial of their motion for separate trials. *Hunter v. State,* 222 Tenn. 672, 440 S.W.2d 1 (1969). Assignment XI is overruled.

Appellants next contend that they were denied effective assistance of counsel by requiring counsel to try the case from 9:00 o'clock one morning until approximately 1:00 o'clock a.m., the next morning.

Court convened at 9:00 o'clock a.m., and after hearing preliminary matters, a jury was picked. The defendants did not commence with their proof until 8:00 o'clock p.m. A few minutes before Midnight, appellants' counsel advised the Court that they were tired and could not effectively assist their clients. Counsel told the Court that due to fatigue, his mind was not functioning clearly and counsel asked the Court to adjourn until the next day. The Trial Judge did not adjourn for the day but continued for another hour and adjourned after hearing all of the evidence at 1:00 a.m. Court was to convene at 9:00 o'clock a.m., that same morning.

The Sixth Amendment guarantees to a criminal defendant the right to effective assistance of counsel at every step in the proceedings. *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *McKeldin v. State,* 516 S.W.2d 82 (Tenn. 1974). The last hour of a trial is an essential portion thereof. We hold that the Court erred in not adjourning at Midnight when counsel stated that they could no longer be effective and that they were not thinking clearly.

We are also mindful of the fatigue of the jurors. We think that absent unusual and compelling circumstances, the jury should not be permitted to listen to evidence until 1:00 a.m. No reasonable

cause was given for proceeding until this hour and a defendant being tried for murder is not only entitled to reasonably alert counsel, but to witnesses who are reasonably alert and that the jury should likewise be clear-headed and not unduly fatigued. We think that the 14th Amendment of the United States Constitution and Art. 1, § 8 of the Tennessee Constitution grants appellants these rights.

■ This is not to say that night sessions *per se* are improper under unusual circumstances; however, we do hold that night sessions should be terminated at a more reasonable hour, absent consent of the parties and all members of the jury.

■ Before we can hold a Federal constitutional error to be harmless, we must be able to declare a belief that it was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *McKeldin v. State, supra.* We cannot declare a belief that the error is harmless beyond a reasonable doubt and we must therefore affirm Assignment XII.

The judgment of the Trial Court is reversed as to both defendants. The case is dismissed as to Lola Hembree and remanded for a new trial as to Walter Hembree.

WALKER, P. J., and GALBREATH, J., concur.