IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 21, 2000 Session

## STATE OF TENNESSEE v. TORONDA SHERELLE WILLIAMS

**Appeal as of Right from the Criminal Court for Davidson County**
**No. 97-A-50     Seth Norman, Judge**

---

**No. M2000-00212-CCA-R3-CD - Filed November 30, 2000**

---

Following a grand jury indictment, Toranda Williams, the defendant and appellant, was tried and convicted of first-degree murder in the Davidson County Criminal Court. On appeal, she argues (1) that the trial court erroneously admitted testimony about the results of a polygraph examination; (2) that the court erroneously admitted hearsay testimony; and (3) that the cumulative effect of these errors was substantial enough to require reversal. Because we find the trial court's error in admitting the polygraph test results was harmless, and because the issue regarding hearsay testimony has been waived for failure to include it in the motion for a new trial, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court of Davidson County is Affirmed.**

JERRY SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES, and JOHN EVERETT WILLIAMS, JJ., joined.

Jennifer Lynn Thompson, Nashville, Tennessee, attorney for the appellant, Toranda Sherelle Williams.

Paul G. Summers, Attorney General & Reporter, Russell S. Baldwin, Assistant Attorney General, and Victor S. Johnson, District Attorney General, Lisa Naylor, Assistant District Attorney, attorneys for the appellee, State of Tennessee.

### OPINION

#### I.

The defendant's boyfriend, Cory Polk, went to a residence to collect a twenty (20) dollar debt from Victor Woods. Mr. Polk and Mr. Woods argued briefly, and Mr. Polk left without collecting the debt. After Mr. Polk left the house, he got into an argument with his girlfriend, the defendant, just outside the house. Following that argument, the defendant went back to the apartment and told Mr. Woods not to leave the house without the twenty (20) dollars. Shortly thereafter, the defendant

returned to the apartment with a revolver. She kicked the door open and shot Mr. Woods several times. He died as a result of the gunshot wounds.

During a police investigation of the shootings, Detective Mike Roland interviewed the defendant. She admitted being in the area of the shooting that night, but denied any involvement. She told police that her boyfriend's name was Cory Polk and that he was a drug-dealer. The defendant said that, on the night of the shooting, she went to find Mr. Polk to get money from him. She found Mr. Polk, and he gave her between forty (40) and fifty (50) dollars. About that time, the defendant heard three (3) gunshots, so she got into her car and left.

Later that day, Detective Roland received a phone call from someone claiming to identify the shooter. The caller identified the shooter as Trina and said that Trina was married to someone named Cory Smith. Further investigation revealed that "Trina" was actually Catrina Watkins Smith.[1] After interviewing Ms. Smith, Detective Roland excluded her as a suspect; police arrested the defendant instead.

At trial, the state presented three (3) witnesses that were present when the shooting occurred. The first witness was Robert Kirby. Mr. Kirby was Cory Polk's cousin, and he knew the defendant. Mr. Kirby testified that Cory Polk and the defendant were dating. On September 13, 1996, Mr. Kirby, then fifteen (15) years old, was staying with his grandfather. That evening, Mr. Kirby went to visit friends near Third Avenue. There, he saw the defendant walking toward a house. Mr. Kirby followed the defendant and walked in the house beside the defendant. The defendant then pulled out a gun and shot Victor Woods several times. Mr. Kirby was close enough to the defendant to feel heat when the gun was fired. Mr. Kirby was frightened, and he ran away from the house.

The state's next witness was Sandra Murphy. Ms. Murphy testified that on September 13, 1996, she went to the house on Third Avenue to get high. Ms. Murphy had just finished smoking crack cocaine when Victor Woods arrived at the house. After that, someone named Cory arrived at the house and called Mr. Woods outside.[2] Ms. Murphy testified that Mr. Woods argued with Cory about a twenty (20) dollar debt. Unable to collect any money from Mr. Woods, Cory left. Mr. Woods came back in the house, and Cory's girlfriend followed. She told Mr. Woods that he "better have the twenty dollars." Shortly after that, Cory's girlfriend came back in the house. Ms. Murphy testified that Cory's girlfriend shot Mr. Woods three (3) times. After the shooting, Ms. Murphy fled.

Ms. Murphy told police about the events two (2) days after the shooting. She described the shooter as being tall and slim. Police showed a photographic line-up to Ms. Murphy, but Ms. Murphy was unable to identify the shooter.

The state's next witness was Dennis Merrell. Mr. Merrell testified that he was with Robert Kirby on the night of the shooting. Although Mr. Merrell was drunk that night, he saw Cory Polk arguing with the defendant outside the home on Third Avenue. From his perspective, Mr. Merrell could not see the doorway to the house. After Mr. Polk and the defendant argued, Mr. Merrell saw the defendant go to the house. The defendant came back out of the house briefly and spoke to Mr.

---

[1]The suspect was identified as Catrina Smith and as Catrina Watkins. The record does not reflect which is her real name.

[2]Ms. Murphy did not testify as to Cory's last name. Although Ms. Murphy knew another Cory, in her testimony she was referring to "drug-dealer Cory," not "the other Cory."

Polk. Then, the defendant went back in the house with several people behind her. Mr. Merrell heard gunshots come from inside the house. After the gunshots, Mr. Merrell saw the defendant running from the house carrying a gun. He testified that the gun "looked like a thirty-eight." The defendant ran from the house, jumped in the passenger side of a blue car, and left. After the shooting, Mr. Merrell identified the defendant from a photographic line-up.

Following trial, the defendant was convicted and sentenced to life in prison.

II.

The appellant raises three issues, all of which stem from Detective Mike Roland's testimony.[3] During trial, Detective Roland testified about his investigation of the case as follows:

> Well, I received a phone call later on that afternoon from a lady that identified herself as Ruby Lawrence. She was calling to say that she had information on the homicide. That a girl named Trina had committed the homicide. And Trina was married to a Cory Smith. And Trina lived in University Court Apartments and drove a white Mitsubishi Eclipse.
>
> This woman had told me that she was in some trouble right now and that she needed some money and some help getting out of trouble with vice I believe.
>
> . . . .
>
> I received another phone call – I believe it was on the 16th – from the Crime Stoppers Unit saying that Catrina Watkins was the person that did the shooting.
>
> . . . .
>
> I did manage to get a hold of her. She agreed to come downtown and talk to me. She came down to the office. She gave an interview. Told where she was that night. Who she was with. That she didn't know Toranda Williams. She didn't know Cory Polk. She didn't know Victor Woods or any of the people involved in the investigation. And she took a polygraph test, which she passed --

At that point, the defendant objected, but the trial court overruled the objection. This testimony is the basis of the defendant's appeal.

III.

First, the defendant claims that the admission of the results of the polygraph examination was erroneous. The state now concedes that Detective Roland's testimony about the polygraph examination was inadmissable, but argues that the trial court's error was harmless.

---

[3]The defendant's third issue regards the cumulative effect of the errors. However, as is discussed below, we only find one error, and it was harmless. Thus, we need not discuss the cumulative effect.

A.

It has long been established in Tennessee that the results of a polygraph examination are not admissible as evidence in a criminal prosecution. Grant v. State, 374 S.W.2d 391, 392 (Tenn. 1964); State v. Campbell, 904 S.W.2d 608, 614-15 (Tenn. Crim. App. 1995); State v. Adkins, 710 S.W.2d 525, 529 (Tenn. Crim. App. 1985). The courts of this state have consistently held that the results of such tests are "inherently unreliable." Adkins, 710 S.W.2d at 529. In this case, although the defendant objected to the admission of the results, the court overruled the objection. The court's ruling was clearly erroneous.

B.

We are convinced, however, that the trial court's error was harmless. Robert Kirby testified that he saw the defendant shoot the victim. He also testified that he knew the defendant and knew that her boyfriend was Cory Polk. Although Sandra Murphy could not identify the shooter, she saw the shooting and testified that the shooter was the girlfriend of a drug-dealer named Cory. Furthermore, Dennis Merrell testified that he saw the defendant go into the house, that he heard gunshots, and that he saw the defendant flee with a gun. Finally, although the defendant did not testify at trial, her statement to police indicated that she was in the area when the shooting took place and that she fled after the shooting.

The defendant cites Hembree v. State, 546 S.W.2d 235 (Tenn. Crim. App. 1976) to support her argument that the erroneous admission of polygraph examination results was prejudicial. In that case, however, substantial evidence proved that either the defendant or the witness who took a polygraph examination was the perpetrator. The court held that evidence that the witness took a polygraph examination and the reasonable inference that the witness passed the test were highly prejudicial. Id. at 240. However, in the instant case other than the call Detective Roland received, there was no evidence that Catrina Watkins Smith committed the offense. In short, we cannot find that the trial court's error more probably than not affected the judgment or resulted in prejudice to the judicial process. Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b).

C.

The appellant also argues that the state improperly relied on the erroneously admitted testimony during closing arguments. However, the record does not contain a transcript of closing arguments. It is the duty of the defendant to prepare a record which conveys a fair, accurate and complete account of what transpired in the trial court with respect to the issues which form the basis of his appeal. Tenn. R. App. P. 24(b); State v. Ballard, 855 S.W.2d 557, 560-61 (Tenn. 1993). When the record is incomplete or does not contain the proceedings relevant to an issue, this Court is precluded from considering this issue. State v. Gibson, 973 S.W.2d 231, 244 (Tenn. Crim. App. 1997). Thus, we may not consider the defendant's claim that the trial court's error was compounded by the state's reliance on the polygraph results in closing.
This issue is without merit.

IV.

Next, the appellant asserts that Detective Roland's testimony about Catrina Watkins Smith's statements should have been excluded because it was hearsay. Further, he claims that the testimony

was prejudicial, because, like the statement about the polygraph examination, it exonerated an alternate suspect.  This issue has been waived, because the defendant did not present this issue is his motion for new trial.  <u>See</u> Tenn. R. App. P. 3(e).

Accordingly, the judgment of the trial court is AFFIRMED.

_____
JERRY SMITH, JUDGE