IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 10, 2006 Session

## STATE OF TENNESSEE v. BOBBY RAY JOHNSON

**Appeal from the Circuit Court for Coffee County**
**No. 32,485F     John W. Rollins, Judge**

---

**No. M2005-02357-CCA-R3-CD - Filed July 27, 2006**

---

In the latter half of 2001, the defendant, Bobby Ray Johnson, who was living in Coffee County, convinced his girlfriend to engage in fellatio on two occasions with the minor victim, while the defendant watched and videotaped the encounters. The defendant was indicted for two counts of rape of a child. The defendant was convicted on both counts by a Coffee County jury. The trial court sentenced the defendant to two consecutive sentences of twenty years each to be served at 100% as a child rapist. The defendant argues that there was insufficient evidence to support his conviction and that the trial court erred in ordering his sentences to be served consecutively. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

Robert S. Peters, Winchester, Tennessee for the appellant, Bobby Ray Johnson.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Mikey Layne, District Attorney General; and Jason Ponder, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

C.O.[1], the victim, a special education student, was thirteen at the time of the trial. He had known the defendant and the defendant's girlfriend for two or three years. C.O. worked for the defendant at his combination body and hunting shop sanding cars, sweeping the floor, and taking

---

[1]It is the policy of this Court to refer to minor victims of sexual crimes by their initials.

care of the defendant's hunting dogs. The victim also lived next to the defendant for a period of time. The defendant paid the victim about ten dollars a day.

In 2001, the victim spent the night with the defendant. After they finished their work at the shop around 6:00 p.m., the defendant and the victim went back to a room and the defendant turned on the television and played some pornographic movies. The defendant's girlfriend, Mary Fisher, came home around 7:00 p.m. She went to the bathroom and took a shower. After her shower, Ms. Fisher came into the room wearing a shirt and underwear. When she entered the room, the defendant told the victim to take off his clothes. The victim did what he was told. The defendant ordered the victim to get on the bed. He told C.O. to get on the bed twice before the victim complied. The defendant told Ms. Fisher to engage in fellatio with the victim. While she engaged in fellatio with the victim, the defendant videotaped the encounter. After Ms. Fisher stopped, the victim put his clothes on and fell asleep on a couch in the room. The defendant threatened to kill the victim if he told anyone about the sexual act performed by Ms. Fisher.

Also sometime before September 11, 2001, the victim again spent the night with the defendant. The defendant and the victim finished work at 6:00. Ms. Fisher arrived home around 7:00 and took a shower. When she came out into the room, she was wearing underwear and shorts. The defendant repeatedly told the victim to take off his clothes, before the victim complied. The defendant then told the victim to get on the bed. The defendant made Ms. Fisher go over to the bed, and he again told her to engage in fellatio with the victim. She acceded to the defendant's request. The defendant again videotaped this encounter. This time, the defendant also took his clothes off and got on the bed, but the victim could not recall what happened at that time. The victim stated that the defendant was the instigator for the sexual acts, the defendant videotaped the sex acts and was responsible for the sex acts.

Ms. Fisher began dating the defendant in 1999. In April of 2000, Ms. Fisher moved in with the defendant. She lived with him until June or July of 2003. While Ms. Fisher and the defendant were living together, he began videotaping them while they were engaging in sexual acts. He became more violent with her and if she did not perform as he commanded, she "would end up paying for it later."

Ms. Fisher first saw the victim while he was working in the defendant's shop. The first time she had sexual relations with the victim was between July 2001 and January 2002. She stated that the first night she had sexual relations with the victim, the defendant called her while she was still at work and demanded she come straight home from work. When she arrived home, she saw that the defendant and the victim were watching a videotape that the defendant had made of himself and Ms. Fisher having sex. She became angry with the defendant. The defendant then told her that she was going to engage in fellatio with the victim. She told the defendant she did not want to engage in sexual relations with the victim. However, she was afraid that the defendant would assault her again, and the beatings were becoming worse each time. She stayed in the bathroom so long, the defendant became angry and came in to get her. They then went into the bedroom. The victim and the defendant were sitting on a couch in the bedroom. The defendant told her to get on her knees

and engage in fellatio with both the defendant and the victim in turn. During the sexual act, the defendant was videotaping the encounter. The camera was on a tripod or in the defendant's hand. The encounter went on for a long time. The defendant would change everyone's positions. At one time he had the victim stand up next to him and had Ms. Fisher fellate them at the same time. The defendant then had everyone get on the bed. He ordered Ms. Fisher to get on her knees in front of him and fellate him while the victim was to get behind her and attempt to anally penetrate her. The victim eventually got upset and went to the couch. The defendant and Ms. Fisher then had sex on the bed while C.O. was in the room.

The second time also occurred between July of 2001 and January of 2002. The defendant told Ms. Fisher to go get the victim because they were going to make another sex tape. Ms. Fisher told the defendant she was not going to get the victim and there was not going to be another videotape. The defendant chased her, and she ran to the car and went to get C.O. The defendant asked the victim if he wanted to do what they did last time, and he said he did. The defendant then told C.O. to sit in a chair between the video camera and the couch. The defendant told Ms. Fisher that he wanted her to do whatever the victim wanted to do and that he wanted to watch her and the victim have sexual relations. The defendant watched their encounter and gave instructions to the victim while Ms. Fisher was engaging in fellatio with him. The video camera was running during the encounter. Apparently things were not going as the defendant had planned because he became very angry. As a result, Ms. Fisher took the victim home.

Ms. Fisher testified at trial without any promises being made to her by the State. She admitted that she was guilty, but stated that her relations with C.O. and the making of the videotapes were not her idea. Ms. Fisher destroyed the videos that the defendant made of her and C.O. She stated that she knew as long as he had those videotapes she would never be able to get away from him. She was twenty-eight at the time of the trial and the defendant was around forty. Ms. Fisher also stated that she and the defendant used methamphetamine. She stated that she stayed with the defendant because she was afraid of him and because he told her that he had colon cancer and was going to die. She believed that she needed to take care of the defendant.

Investigator Billy Cook is an investigator with the Coffee County District Attorney's office. Investigator Cook took a statement from Ms. Fisher. Mr. Cook stated that her testimony at trial was accurate as to the contents of her statement. Mr. Cook also took a statement from the defendant after his arrest. Mr. Cook is very familiar with methamphetamine addictions. He is in charge of the battle against methamphetamine use in Coffee County. He has never had one addict blame their addiction for the rape or sexual assault of children. During his statement, the defendant spoke of his methamphetamine addiction. He confessed to the crimes at issue and began sobbing. The defendant stated that he engaged in the illicit activity because he was high on methamphetamine. Mr. Cook also found several videotapes at the defendant's residence. The videotapes are very similar in nature to the descriptions given by Ms. Fisher and C.O. as to how the videotapes were made. The defendant would direct and participate in sexual acts on the videotapes. Two tapes were of Ms. Fisher and the defendant engaging in various sexual activity. Another tape was of Ms. Fisher, the defendant and

an unknown white male engaging in sexual activity. Other tapes involved the defendant and three unknown white females.

## ANALYSIS

The defendant argues two issues on appeal: (1) Whether the evidence presented at the trial of this child rape case, where the defendant did not perform a sex act on the child, but who observed and videoed a sex act being performed by his girlfriend, was sufficient to establish guilt of rape of a child beyond a reasonable doubt; and (2) whether the trial court erroneously imposed consecutive sentences of twenty years each for two counts of child rape.

### Sufficiency of the Evidence

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the state. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

The defendant argues that there was insufficient evidence to prove that he is guilty of rape of a child because he himself did not actually perform a sex act on the victim. The State argues that the evidence is sufficient to prove that defendant's guilt through the theory of criminal responsibility for the acts of another as set out in Tennessee Code Annotated section 39-11-402(2).

Rape of a child is defined as "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522. Sexual penetration is defined as, "sexual intercourse, cunnilingus, fellatio, anal

intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body . . . ." Tenn. Code Ann. § 39-13-501(7).

Criminal responsibility for the acts of another is defined as, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense . . . ." Tenn. Code Ann. § 39-11-402(2). Criminal responsibility is not a separate crime; rather, it is "solely a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person." State v. Lemacks, 996 S.W.2d 166, 170 (Tenn. 1999). Under a theory of criminal responsibility, an individual's presence and companionship with the perpetrator of a felony before and after the commission of an offense are circumstances from which his or her participation in the crime may be inferred. See State v. Ball, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). No particular act need be shown, and the defendant need not have taken a physical part in the crime in order to be held criminally responsible. See id. To be criminally responsible for the acts of another, the defendant must "'in some way associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree.'" State v. Maxey, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (quoting Hembree v. State, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976)).

There is no question that there were two occasions of sexual penetration of Ms. Fisher by the victim. The victim was thirteen years old on January 29, 2004, the time of the trial. The incidents occurred sometime between July 2001 and January 2002. Clearly, the victim was under the age of thirteen at the time of the crime. Therefore, the State met the elements for rape of a child. For the defendant to be guilty of rape of a child under the theory of criminal responsibility the State must prove that the defendant "associate[d] himself with the venture, act[ed] with knowledge that an offense is to be committed, and share[d] in the criminal intent of the principal in the first degree." Id.

The victim and Ms. Fisher testified that the defendant told them to undress. Both the victim and Ms. Fisher testified that the defendant told Ms. Fisher to engage in fellatio with the victim. Both the victim and Ms. Fisher testified that the defendant videotaped and more or less produced and directed the sexual encounters. When viewing the evidence in a light most favorable to the State, there is ample evidence to prove that the defendant assisted and participated in the rape of C.O. and is criminally responsible for Ms. Fisher's acts of actual fellatio.

Therefore, this issue is without merit.

**Sentencing**

The defendant also argues that the trial court erred in sentencing him to consecutive sentences. "When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the

determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

In balancing these concerns, a trial court should start at the presumptive sentence, enhance the sentence within the range for existing enhancement factors, and then reduce the sentence within the range for existing mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute. See State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995). The weight given to each factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our code and as long as its findings are supported by the record. Id.

The trial court made the following findings at the sentencing hearing:

I looked at the pre-sentence report, and no mitigating factors were filed by the defense in this case. The following enhancing factors appear: The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. Two, a victim of the offense is particularly vulnerable because of age or physical or mental disability. Three, the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement, and four, the defendant has a previous history of unwillingness to comply with conditions of a sentence involving release in the community. Five, the felony was committed while on any of the following forms of release status if such release is from a prior felony conviction, and in this particular case, Mr. Johnson was on felony probation in Coffee County, Tennessee, . . . for aggravated assault with a deadly weapon. He was an absconder from supervision when the incident offense occurred. A probation violation is pending in this case. I don't know that I have seen any more egregious conduct. I'm going to adopt the position of the State and incorporate the memorandum in the order and sentence Mr. Johnson to consecutive terms.

A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that "the defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with

consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of the defendant's undetected activity, and the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims." Tenn. Code Ann. § 40-35-115(b)(5). This section also permits consecutive sentencing when "[t]he defendant is sentenced for an offense committed while on probation . . . ." Tenn. Code Ann. § 40-35-115(b)(6).

The defendant argues that the trial court did not adequately state on the record why the defendant received consecutive sentences. In State v. Palmer, 10 S.W.3d 638 (Tenn. Crim. App. 1999), perm. app. denied, (Tenn. Jan. 3, 2000), we pointed out that Rule 32(c)(1) of the Tennessee Rules of Criminal Procedure requires that a trial court "specifically recite the reasons" behind its imposition of a consecutive sentence. 10 S.W.3d at 647-48. We agree with the defendant that the findings of the trial court are not those required by Rule 32(c)(1). However, we find that the record is sufficient for a review of the propriety of consecutive sentencing.

The defendant argues that the facts supporting the defendant's convictions are not sufficient to support the imposition of consecutive sentences under Tennessee Code Annotated section 40-35-115(b)(5). We do not need to reach that question. According to the record, the defendant was on probation for aggravated assault at the time of his conviction and sentencing. In fact, his impending probation revocation hearing was discussed at the sentencing hearing for the instant case. Under Tennessee Code Annotated section 40-35-115(b)(6), a trial court may impose consecutive sentences if the defendant is on probation at the time of his conviction. There is no question that this is the situation in the case sub judice. Therefore, at least one of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) for consecutive sentencing is established by the record.

This issue is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the judgments of the trial court.

_____
JERRY L. SMITH, JUDGE