# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 12, 2006

## STATE OF TENNESSEE v. MARQUES DOUGLAS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 04-07005      Paula Skahan, Judge**

---

**No. W2005-01830-CCA-R3-CD  - Filed January 2, 2007**

---

The defendant, Marques[1] Douglas, was convicted of two counts of aggravated robbery.  On appeal, the defendant asserts that the evidence was insufficient to support the guilty verdicts.  After review, we affirm the judgments of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Anthony Helm, Memphis, Tennessee, for the appellant, Marques Douglas.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Senior Counsel; William L. Gibbons, District Attorney General; and Emily C. Taub, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant was indicted on two counts of aggravated robbery as a result of two female victims being forcibly deprived of their purses and contents on May 25, 2004.  A Shelby County jury returned verdicts of guilty as to both counts.  The defendant asserts that the evidence was insufficient to prove his guilt beyond a reasonable doubt.

An appellate court's standard in reviewing a sufficiency question is "whether considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  State v. Reid, 91 S.W.3d 247, 276 (Tenn. 2002), see also Tenn. R. App. P. 13(e).  On appeal, the State is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn

---

[1] "Marques" is used herein to remain consistent with the indictment and other documents contained in the record.  The transcript reflects that the defendant spelled his name "Marquis."

therefrom. State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000). A guilty verdict by the trier of fact resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). "Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this court does not re-weigh or re-evaluate the evidence." State v. Evans, 108 S.W.3d 231, 236 (Tenn. 2003) (citing Bland, 958 S.W.2d at 659).

"Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a) (2006). The offense becomes aggravated robbery when it is accomplished with a deadly weapon or by displaying an article which is used to cause the victim to reasonably believe it is a deadly weapon. T.C.A. § 39-13-402(1) (2006).

Facts

Danielle Eaglin was one of the two victims of an aggravated robbery on May 25, 2004. She testified that she had just returned to her apartment complex with her friend, Dominique Crenshaw. While the two women were in the parking lot, a car entered through the exit drive, drove past the women, and then returned. Ms. Eaglin stated that there were either three or four persons in the car. The occupant in the front passenger seat stepped out and pointed a gun at Ms. Eaglin and Ms. Crenshaw. The gunman told them to throw their purses down, and the victims complied. Ms. Eaglin said that when her companion started to run, the driver said, "[W]atch her, watch that bitch, she's trying to run." She stated that she was looking at the driver when he made this statement. After the victims had surrendered their purses, the gunman told them to run. The victims went to Ms. Eaglin's apartment and notified the police. Ms. Eaglin was unable to make an identification of any suspects when shown a photographic lineup. At Damien Starks's preliminary hearing, Ms. Eaglin identified him as the gunman. Ms. Eaglin did not recover her purse. No money was in the purse, but it did contain credit cards and some important documents.

Dominique Crenshaw testified that immediately before the robbery, she and Ms. Eaglin were in the parking lot at Ms. Eaglin's apartment complex. A sports car entered the parking lot, drove past them, and then returned. The passenger in the front seat exited the vehicle and pulled a gun on the two women. He then asked if he could help the women with anything. Ms. Crenshaw said that the driver said, "watch her, watch her," as she backed away. The gunman instructed the victims to throw down their purses and then told them to "run bitch[es], run." Ms. Crenshaw's purse contained $20, a credit card, a phone, and her keys. She later identified the gunman from a photographic lineup.

Sergeant Michael Tabor, a member of the robbery bureau of Memphis Police Department, was involved in the investigation of this incident. He testified that Damien Starks was the first suspect identified. After being arrested and questioned, Starks confessed. He implicated the defendant and Terrick Hughes as being with him during the robbery. The defendant was arrested and gave a statement after questioning. The defendant denied any participation other than being the

driver and being present when Starks executed the offenses. The defendant stated that Starks took two purses from the victims but did not share their contents with the defendant or Hughes. The defendant said that Starks threatened harm to the defendant's family if he talked about the incident.

The defendant testified in his own behalf. He stated that he was smoking marijuana at the Peppertree Apartments when he was approached by Damien Starks and Terry Hughes who offered him five dollars to drive them to an unspecified location. Starks gave driving directions to the defendant and told him to stop after the two victims were seen. The defendant said he parked on the side of the apartment building. Starks then got out of the car and went to the front of the apartment building, which was out of the defendant's sight. Shortly thereafter, Starks ran back to the car with a gun and two purses. When the three returned to the defendant's apartment complex, Starks threatened the defendant's family if he spoke about the robberies. The defendant denied knowing that Starks was armed prior to the robberies and denied receiving any of the spoils.

Damien Starks testified as a rebuttal witness for the State. He stated that he had met the defendant at least two weeks prior to the instant offenses. On the night of these robberies, Starks, the defendant, and Terrick Hughes had been riding in the defendant's wife's vehicle while snorting cocaine. According to Starks, his handgun was in the car's console with the knowledge and consent of the defendant. The three men were performing what Starks described as "spot-robbing;"driving until a favorable opportunity to rob presented itself. When the two victims were seen, Starks told the defendant to stop. The defendant drove up to the victims, and Starks got out with the gun displayed. When the victims backed away, the defendant said, "[W]atch her, watch her, stop that bitch, watch that bitch." Starks said that after the victims surrendered their purses, he grabbed the purses and his group left. Starks put the gun back in the console and used the $20 to $30 found in the purses to buy more cocaine for himself, the defendant, and Hughes.

Analysis

In challenging the sufficiency of the evidence, the defendant asserts that the defendant's statement to watch the victims could also be interpreted in an innocent manner. The defendant also characterizes the co-defendant Starks's testimony as being "questionable" and "suspect." In support of the attack on Starks' testimony, the defendant points out that Starks was impeached by his prior criminal convictions involving dishonesty and Starks's admission to making false statements to police in his original confession. These contentions ignore a fundamental purpose of the jury, to evaluate the credibility of the witnesses and to decide between conflicts in testimony. Evans, 108 S.W.3d at 236. The jury herein exercised their prerogative, and in our view, it was an eminently rational verdict. The victims related that the driver issued a warning in aide of the gunman. Both witnesses heard and saw the defendant utter the warning. Although the victims did not identify the defendant, he admitted his role as the driver. The jury obviously discredited the defendant's testimony which was in conflict not only with the impeachable Starks's version but also with the two victims' testimony.

The State had argued that the defendant was guilty under the theory of criminal responsibility. A person is criminally responsible for the conduct of another if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids or attempts to aid another person to commit the offense[.]" T.C.A. § 39-11-402(2) (2006). To be criminally responsible for the acts of another, the defendant must "'in some way associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree.'" State v. Maxey, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (quoting Hembree v. State, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976)). We conclude that ample evidence existed for a rational jury to convict the defendant on the two aggravated robberies beyond a reasonable doubt. The judgments of conviction are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE