IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 19, 2005

## STATE OF TENNESSEE v. ANTHONY D. PARR

**Direct Appeal from the Circuit Court for Dyer County**
**No. C03-389     Lee Moore, Judge**

_____

### No. W2004-01458-CCA-R3-CD  - Filed May 9, 2005

_____

The defendant, Anthony D. Parr, was convicted by a Dyer County jury of the sale of over .5 grams of a Schedule II controlled substance, cocaine, a Class B felony, and was sentenced as a Range I, standard offender to ten years in the Department of Correction.  On appeal, he asserts: (1) the evidence was insufficient to sustain his conviction; (2) the State failed to establish evidentiary chain of custody; and (3) the prosecutor made prejudicial comments in the State's opening arguments. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Larry E. Fitzgerald, Memphis, Tennessee, for the appellant, Anthony D. Parr.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; and C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

The defendant was charged in a one-count indictment with the sale of more than .5 grams of a Schedule II controlled substance (cocaine), arising out of a May 21, 2003, transaction in Dyersburg with a confidential informant who was working undercover for law enforcement officials.  The State's first witness at the defendant's March 26, 2004, trial was Dyersburg Police Sergeant Sterlin Wright, who testified that he was assigned to the bike patrol, which also involved narcotics work. Sergeant Wright said that he had approached the confidential informant involved in the case, Brandon Webb, in early 2003 after observing him leave a "crack house," and asked him to assist the police in making undercover drug buys.  Webb agreed, and was paid fifty dollars for each buy and

another fifty dollars after each trial. Webb assisted the police for about a year and made "somewhere in the neighborhood of fifty or more" buys during that time.

On May 21, 2003, Webb contacted Sergeant Wright and advised him that he could purchase drugs at 1009 Compress in Dyersburg. Earlier in the year, Sergeant Wright had participated in the execution of a search warrant at that address where Pam Clark resided. Sergeant Wright met with Webb and had Webb call the address and set up a drug transaction. The telephone conversation between Webb and the defendant was taped by Sergeant Wright. After thoroughly searching Webb and his vehicle to insure that he had no drugs, Sergeant Wright placed a transmitter on Webb's body so he could remotely monitor the transaction. He also gave Webb $130 in cash, which had been "xeroxed" earlier as a method of comparing serial numbers at a later time. Sergeant Wright and Officer Billy Buck followed Webb to the house in a marked unit and parked a "pretty safe distance" away where they could still observe Webb go into the house. Once Webb was inside the residence, "somebody turned the music up real loud" such that Sergeant Wright could not understand through the transmitter what was being said inside the residence. Afterwards, when Webb left the residence, the officers followed him to a predetermined meeting place and retrieved the purchased cocaine. Based on information provided by Webb, Sergeant Wright obtained a search warrant of the residence and was present during its execution later that same afternoon. In addition to "crack pipes" recovered from two other occupants of the house, the officers also discovered cocaine in Clark's bedroom. The defendant was sitting on the couch when the officers arrived, and he and Clark both were arrested and searched. The defendant had no drugs on him at the time.

Investigator Mark Reynolds of the Dyersburg Police Department testified that he is in charge of evidence turned into the department, and he identified evidence seized in the present case, including a sealed envelope marked "cocaine." After the evidence had been delivered to the evidence room by Sergeant Buck, Investigator Reynolds hand-delivered the evidence to the Tennessee Bureau of Investigation ("TBI") Laboratory in Jackson for analysis. After the analysis was completed, he retrieved the evidence from the laboratory and placed it back in the evidence room. Reynolds also identified and described an envelope containing $130 in cash, as well as "xerox copies" of the cash, that had been placed in the evidence room by Sergeant Wright and which Reynolds brought to court at the request of the State.

Dyersburg Police Sergeant Billy Buck testified that in May 2003, he was on the bike patrol, which also entailed narcotics work. He had used confidential informant Brandon Webb for "several" undercover drug buys, and he was familiar with the house at 1009 Compress where Pam Clark resided. On May 21, 2003, following their "normal procedure," the officers recorded the telephone conversation in which the confidential informant set up the undercover buy for $130. The officers searched Webb and his vehicle and then provided him with $130 in buy money, which they had previously documented with xerox copies. Sergeant Buck did not see the actual transaction, and he could not remember if the officers were close enough to see Webb enter the residence. However, they met with Webb after he left the house and recovered crack cocaine from him. He positively identified the bag and the envelope containing the cocaine, both of which he initialed after recovering the drugs from Webb. Later, the officers applied for a search warrant of the residence

and the "occupants within the residence," and he assisted in its execution. After the defendant was arrested, Sergeant Buck searched the defendant and recovered $747 from his pocket, $130 of which matched the money from the undercover buy.

Twenty-year-old Brandon Webb testified that he had been a crack cocaine addict for the past four years and that he was currently residing at a rehabilitation center in Memphis. In 2003, Webb worked as a confidential informant for Sergeants Wright and Buck in exchange for monetary payments. Webb admitted using cocaine at the same time he was working as a confidential informant. On the morning of May 21, 2003, he bought cocaine from Pam Clark at her residence and contacted Sergeant Wright to inform him that he could purchase more. He then spoke to the defendant, who was living with Clark, by telephone and arranged to purchase an "eight ball" of crack cocaine. The agreed-upon price for the cocaine was $150, which was later renegotiated to $130. After Sergeant Wright gave Webb the $130, Webb went to Clark's residence on Compress, purchased an "eight ball" from her, and then returned to meet the officers.

On cross-examination, Webb admitted to having a $100 a day drug habit in the past, which would amount to smoking about five rocks of crack cocaine per day. He had been incarcerated as a result of his conviction for aggravated burglary, and he admitted committing burglaries to obtain money for cocaine. The day of the buy was the first time he had met the defendant, and he sat and talked to the defendant "for awhile" that morning. Webb testified that on the morning of the buy, the defendant and Clark "both informed [him] they were going to Newbern to re-up on some more drugs and told [him] to call [the defendant] whenever [he] got ready." When Webb returned to the house to make the undercover buy, the defendant was sitting in the living room and Clark emerged from her bedroom with the cocaine. Webb gave the money to Clark, and she gave him the cocaine. Webb did not obtain the drugs directly from the defendant. Based on his familiarity with the defendant's voice from having met him earlier on the morning of the buy, Webb repeated that he was certain that he talked to the defendant on the telephone to arrange the undercover transaction.

Pam Clark testified that she was dating the defendant on May 21, 2003, and was familiar with Brandon Webb because she "used to hang out with him." The defendant was at her house on May 21, 2003, and she obtained from the defendant the cocaine she sold Webb that day. Webb paid her $130, which she "immediately" gave to the defendant. Later that day, when the search warrant was executed at her house, she and the defendant were arrested and officers recovered the buy money from the defendant. On cross-examination, Clark stated that she did not use cocaine but only sold it. She admitted that the cocaine recovered by the officers at the head of her bed belonged to her. She acknowledged that she had been convicted of possession of less than .5 grams of a controlled substance with intent to sell and that she was receiving a "deal" for her testimony.

TBI Special Agent Forensic Scientist Dana Rose testified that she analyzed the substance submitted by Investigator Reynolds and determined it to be 1.2 grams of cocaine. She identified the envelope containing the cocaine, which had on it an "intact" seal that she had placed on the envelope after her analysis.

The defendant elected not to testify, and no witnesses were presented on his behalf. After deliberating, the jury found him guilty of the sale of over .5 grams of cocaine. Following a sentencing hearing on April 27, 2004, the trial court sentenced the defendant as a Range I, standard offender to ten years in the Department of Correction. The trial court ordered the sentence to be served consecutively to the defendant's sentences on two prior drug convictions.[1]

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant first contends that the evidence at trial was insufficient for a rational trier of fact to find him guilty of the crime beyond a reasonable doubt. Specifically, he argues that neither Brandon Webb nor Pam Clark was a reliable witness, as Webb was a "crack addict" and a paid informant, and Clark had "made a deal" with the State in exchange for her testimony. Further, he argues that Clark testified that she sold the drugs to Webb who did not see either where Clark obtained the cocaine or Clark giving the defendant the buy money. The State contends that the jury was able to assess the credibility and chose to accredit the testimony of both Webb and Clark and that the record "overwhelmingly establishes that the defendant was criminally responsible for the sale of cocaine by Clark to the informant." We agree with the State.

When the sufficiency of the convicting evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Under Tennessee law, a person may be charged with an offense if "he or she is criminally responsible for the perpetration of the offense." Tenn. Code Ann. § 39-11-401 (2003), Sentencing Commission Cmts. A person is criminally responsible for the conduct of another if, "[a]cting with

---

[1] At the time of the defendant's arrest, he was on probation for a felony sale of marijuana conviction in Dyer County as well as felony possession of a controlled substance, crack cocaine, in Dunklin County, Missouri.

intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]" Id. § 39-11-402(2). Criminal responsibility is not a separate crime; rather, it is "solely a theory by which the State may prove the defendant's guilt of the alleged offense, . . . based upon the conduct of another person." State v. Lemacks, 996 S.W.2d 166, 170 (Tenn. 1999).

Under a theory of criminal responsibility, an individual's presence and companionship with the perpetrator of a felony before and after the commission of an offense are circumstances from which his or her participation in the crime may be inferred. See State v. Ball, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). No particular act need be shown, and the defendant need not have taken a physical part in the crime in order to be held criminally responsible. See id. To be criminally responsible for the acts of another, the defendant must "'in some way associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree.'" State v. Maxey, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (quoting Hembree v. State, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976)).

To obtain a conviction for sale of .5 grams or more of a Schedule II controlled substance, cocaine, the State must prove that the defendant knowingly sold .5 grams or more of cocaine or that he was criminally responsible for the sale of the controlled substance by someone else. See Tenn. Code Ann. §§ 39-17-417(a)(3), (c)(1), 39-11-402(2) (2003).

Viewed in the light most favorable to the State, the evidence showed that the defendant and Pam Clark were selling crack cocaine from Clark's residence and that on May 21, 2003, the defendant was criminally responsible for the sale of 1.2 grams of cocaine to the confidential informant Webb by Clark. Sergeants Wright and Buck both testified that Webb, a known confidential informant, approached them with the information concerning crack cocaine being sold out of Clark's house. Webb telephoned the house and arranged a transaction with the defendant, and the conversation was tape-recorded by the officers. The officers thoroughly searched Webb and his vehicle before and after the transaction, and they observed Webb go into the house with $130 that they had given him, and they retrieved crack cocaine from Webb after he exited the house. They executed a search warrant and located more drugs in the house and found the $130 in "buy" money in the pocket of the defendant, who was still present in the house. Webb testified that he recognized the defendant's voice on the telephone as the person who arranged the undercover drug buy and that the defendant was at the house when he bought the cocaine from Clark. Additionally, Clark testified that she both obtained the cocaine from the defendant and immediately gave the defendant the $130 that Webb gave her. The fact that Webb was a paid confidential informant and the fact that Clark was offered a "deal" in exchange for her testimony are matters involving the credibility of the witnesses and have already been resolved by the trier of fact. See State v. Stephen Neil Kennedy, No. 02C01-9706-CC-00203, 1998 WL 161072, at *4 (Tenn. Crim. App. Apr. 8, 1998) ("The use of paid informants to combat drug trafficking and to infiltrate criminal enterprises is recognized as necessary and permissible.") (citing Hampton v. United States, 425 U.S. 484, 495, 96 S. Ct. 1646, 1652, 48 L. Ed. 2d 113 (1976) (Powell, J., concurring)).

By the time the State rested its case, the jury had been made aware of Webb's cocaine addiction, his prior criminal history, and his payment for service as a confidential informant, as well as Clark's history of selling drugs and her "deal" with the State. By their verdict, the jury found the testimony of Webb and Clark credible. It is not the prerogative of this court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact. See generally State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995); State v. Boling, 840 S.W.2d 944, 947 (Tenn. Crim. App. 1992). We conclude, therefore, that the evidence was sufficient for the jury to find the defendant guilty of the sale of more than .5 grams of cocaine beyond a reasonable doubt.

## II. Chain of Custody

The defendant also complains on appeal that "the buy money is insufficient evidence to use against" him because a proper chain of custody was not established at trial. The State responds that the defendant has waived this issue by failing to make a contemporaneous objection at trial and by failing to raise it in his motion for new trial and that even if the issue is not waived, a proper chain of custody was established at trial.

The record reflects that the defendant did not make a contemporaneous objection at trial to the introduction of the "buy" money as evidence. See Tenn. R. Evid. 103(a)(1); State v. Dean, 76 S.W.3d 352, 365-69 (Tenn. Crim. App. 2001); see also State v. Jody Sweat, No. E2000-02472-CCA-R3-CD, 2001 WL 1134604, at *10 (Tenn. Crim. App. Sept. 26, 2001). In addition, the defendant did not raise the issue in his motion for new trial, which also constitutes a waiver. See Tenn. R. App. P. 3(e) (stating that "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived"); State v. Keel, 882 S.W.2d 410, 415-17 (Tenn. Crim. App. 1994). Accordingly, we conclude that this issue has been waived.

## III. Prosecutorial Misconduct

As a final issue, the defendant asserts that the prosecutor made factual assertions in his opening statement which were not supported by testimonial evidence at trial. However, no contemporaneous objections were made to the now assailed statements, and it was not raised in the motion for new trial. Accordingly, we agree with the State that this issue has been waived. See Tenn. R. App. P. 3(e).

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____

ALAN E. GLENN, JUDGE

-6-