IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 2, 2011

## STATE OF TENNESSEE v. RONNIE DOBSON AND MILTON RANCE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 09-04554    W. Mark Ward, Judge**

---

**No. W2010-02571-CCA-R3-CD  - Filed December 22, 2011**

---

Defendant-Appellants, Ronnie Dobson and Milton Rance, were convicted by a Shelby County jury of attempted second degree murder, a Class B felony; two counts of aggravated assault, a Class C felony; aggravated burglary, a Class C felony; employing a firearm during the commission of a dangerous felony, a Class C felony; reckless aggravated assault, a Class D felony; and reckless endangerment, a Class A misdemeanor. Both Dobson and Rance were sentenced as Range I, standard offenders and received effective sentences of eighteen years in the Department of Correction. On appeal, the Defendants argue that the evidence was insufficient to support the convictions of attempted second degree murder and reckless aggravated assault. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Herman Andrew Crisler, III, Memphis, Tennessee, for the Defendant-Appellant, Ronnie Dobson.

John Mark Bowman, Memphis, Tennessee, for the Defendant-Appellant, Milton Rance.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; William L. Gibbons, District Attorney General; and Robert Ratton and Terre Fratesi, Assistant District Attorneys General, for the Appellee, State of Tennessee.

### OPINION

**Trial.** On February 12, 2009, as Albert Bradford was walking out of a store near his home on Capital Avenue in Memphis, Rance confronted him. Rance attempted to punch

Bradford, but Bradford dodged and hit Rance, knocking him to the ground. Bradford saw several men running toward him, so he ran home. He immediately directed his two minor children, B. M. and A. M., to a hallway closet.[1] As Bradford did so, bricks were thrown through the windows of his house. One of these hit B. M. in the leg before she could reach the closet. Bradford then returned to his front door and looked out, where he saw six men outside his home. Dobson kicked the door open, breaking the locks, and the six men entered the house. Several of them attacked Bradford, using chairs and other items, while the other men ransacked the house. Bradford managed to fight off his attackers, and they all left after two or three minutes. Bradford let his children out from the closet, and they ran back to the store. The storekeeper locked the door to keep the men out, and Bradford called the police and his girlfriend, Risa Williams.

When Bradford saw Williams drive by the store returning to their home, he and his children left the store. They went inside the house briefly to prepare to leave again. Shortly after, B. M., who was outside the house by the car, alerted them that Dobson and Rance were coming toward the house with guns. Bradford went outside to B. M. and put her behind him, so that he was between her and the men. Dobson was armed with an assault rifle, and Rance had a handgun. They shot at Bradford several times. Bradford backed away from them, keeping B. M. behind him until he fell on his back in the middle of the street. Dobson and Rance stood over him, approximately one foot away, and Rance shot him in the left leg. At that moment, a police car turned onto the street, and the men fled. Bradford believed they would have continued shooting him had the police not arrived.

Bradford was taken by ambulance to the hospital. He was treated for the gunshot wound to his leg and an abrasion on his arm. He believed he sustained the abrasion when a bullet from Dobson's assault rifle grazed him.

B. M., who was eight years old at the time of trial, testified and substantially corroborated Bradford's account of the events. She recalled that on her way to the closet, she repeatedly heard the sound of glass breaking. She saw all six of the men who were outside the house throwing bricks, one of which hit her on the leg before she got in the closet. Later, once Williams arrived at the house, she saw the same six men return, armed with guns. While B. M. was behind Bradford for protection, the men shot at him, striking him twice. Rance shot at the police when they arrived. B. M. was taken to the hospital in an ambulance for treatment of her leg injury.

Risa Williams, Bradford's girlfriend, received a call from Bradford while she was at work on the day of the offense. She hurried home, where she found the front door open, all

[1]It is the policy of this court to identify minors by their initials only.

the windows broken out, pieces of bricks inside the house, and their belongings scattered on the floor. As they prepared to leave, two armed men approached. From the front porch, Williams watched the men shoot at Bradford as he and B. M. backed away from them toward the street. After Bradford was shot, the police arrived, and the men fled. Williams remained at the house while the police investigated the crime. Officers soon returned with Rance, and Williams identified him as one of the shooters. She later identified Dobson in a photographic lineup as the other shooter.

Officer Roshondra Jackson of the Memphis Police Department was in her patrol car at a nearby intersection when she heard gunshots. As she approached Capital Avenue, she saw Dobson and Rance in the street aiming their weapons at Bradford. They fled, and Officer Jackson chased Rance. She and other officers eventually found Rance hiding in the attic of an abandoned house.

Sergeant Joseph Benya assisted in the search for the suspect who escaped police that day. After investigation, he developed Dobson as a suspect, and created a photographic lineup including Dobson's photograph. Sergeant Stephen Roach showed the photographic lineup to Williams, who identified Dobson as the shooter. Sergeant Roach also informed Rance of his Miranda rights and then questioned him. Rance said that he had been asleep "and the next thing he knew he woke up in the back of a squad car."

Sergeant James Smith of the Memphis Police Department Crime Scene Unit was assigned to collect evidence and process the crime scene on Capital Avenue. Sergeant Smith took a number of photographs of the scene, which were introduced as exhibits at the trial, documenting the general layout of the scene, the damage to the interior and exterior of the house, and the location of shell casings. He found four shell casings: two 7.62 x 39 millimeter shells, commonly fired by rifles such as an AK-47, and two 9 millimeter shell casings.

Following the proof at trial, the jury convicted both Dobson and Rance of attempted second degree murder, two counts of aggravated assault, aggravated burglary, employing a firearm during the commission of a dangerous felony, reckless aggravated assault, and reckless endangerment. This timely appeal followed.

**Analysis.** On appeal, Dobson and Rance argue that the evidence was insufficient to convict them of the attempted second degree murder of Albert Bradford and the reckless aggravated assault of B. M. Regarding the offense of attempted second degree murder, they concede that they committed the lesser included offense of aggravated assault on Bradford. However, they implicitly assert that they did not act knowingly to cause Bradford's death, as they were a foot away when they shot Bradford and only injured his leg. Regarding the

reckless aggravated assault of B. M., Dobson and Rance contend that the evidence was insufficient to prove their identity as the person who threw the brick that injured B. M. They assert that "[b]ecause there was no direct evidence that either appellant injured [B. M.], this conviction should be set aside." The State responds that the evidence was sufficient to prove all the elements of both offenses. Specifically, as to the element of identity for reckless aggravated assault, the State relies on a theory of criminal responsibility. We agree with the State that the evidence was sufficient to support Dobson's and Rance's convictions.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from the evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, this court must decide "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt."

A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt; therefore, a defendant on appeal has the burden of showing that the evidence is insufficient to support the jury's verdict. State v. Thacker, 164 S.W.3d 208, 221 (Tenn. 2005) (citing State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)). A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in the State's favor. Bland, 958 S.W.2d at 659 (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973)). Issues regarding the credibility of witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the jury as the trier of fact, and this court does not reweigh or reevaluate the evidence. Id. (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978), superseded by statute on other grounds as stated in State v. Barone, 852 S.W.2d 216, 218 (Tenn. 1993)). Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)).

"The identity of the perpetrator is an essential element of any crime." State v. Robert Wayne Pryor, No. M2003-02981-CCA-R3-CD, 2005 WL 901140, at *3 (Tenn. Crim. App., at Nashville, Apr. 19, 2005) (citing State v. Thompson, 519 S.W.2d 789, 793 (Tenn. 1975)). The State has the burden of proving "the identity of the defendant as the perpetrator beyond a reasonable doubt." Id. (citing State v. Sneed, 908 S.W.2d 408, 410 (Tenn. Crim. App.

1995)).  The identity of the defendant as the perpetrator, just like guilt generally, may be established by direct evidence, circumstantial evidence, or a combination of the two. Thompson, 519 S.W.2d at 793.  "The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made."  State v. Radley, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999) (citing State v. Strickland, 885 S.W.2d 85, 87-88 (Tenn. Crim. App. 1993)).  This court has stated that the identification of the defendant as the perpetrator is a question of fact for the jury after considering all the relevant proof.  Strickland, 885 S.W.2d at 87 (citing State v. Crawford, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982)).  In addition, this court has held that "the testimony of a victim, by itself, is sufficient to support a conviction."  Id. (citing State v Williams, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981)).

We first address the sufficiency of the evidence for attempted second degree murder. Second degree murder is the "knowing killing of another."  T.C.A. § 39-13-210(a)(1) (2006). "A person acts knowingly . . . when the person is aware that the conduct is reasonably certain to cause the result."  Id. § 39-11-302(b).  Criminal attempt requires, as relevant here, proof that a person "[a]cts with intent to complete a course of action or cause a result that would constitute the offense . . . and the conduct constitutes a substantial step toward the commission of the offense."  Id. § 39-12-101(a)(3).  Attempted second degree murder, therefore, requires the State to prove that a defendant acted with the intent to knowingly kill another and took a substantial step toward doing so.  A defendant's mental state is a factual question for the jury to resolve.  State v. Brown, 311 S.W.3d 422, 432 (Tenn. 2010) (citing State v. Inlow, 52 S.W.3d 101, 104-05 (Tenn. Crim. App. 2000)).  The Tennessee Supreme Court has explained that circumstantial evidence is often the only means of proving mental state: "[W]hile a defendant's mental state is rarely subject to proof by direct evidence, it is within the authority of the jury to infer the defendant's intent, and, therefore, whether the defendant acted 'knowingly,' from surrounding facts and circumstances."  Brown, 311 S.W.3d at 432 (citations and quotations omitted).

In this case, the evidence supported the Defendants' convictions for attempted second degree murder.  Dobson and Rance, after forcing through Bradford's door and attacking him with chairs and other objects, returned armed with an assault rifle and a handgun.  Each fired at least two bullets during the attack.  After Bradford fell on the street, the Defendants stood over Bradford and shot at him again, striking his thigh.  They ceased shooting only when Officer Jackson arrived, and Bradford testified that he believed they would have killed him otherwise.  From this evidence, a jury could have inferred that Dobson and Rance acted with the intent to commit the knowing killing of Bradford.  The jury also could have found that the Defendants' conduct, shooting at Bradford, constituted a substantial step toward that end. The evidence, therefore, was sufficient to support the convictions of attempted second degree murder.

Regarding the convictions for reckless aggravated assault against B. M., the State was required to prove that Dobson and Rance, with a reckless mental state, either (1) caused bodily injury and used or displayed a deadly weapon or (2) caused serious bodily injury. T.C.A. § 39-13-102(a)(2). A person acts with a reckless mental state "when the person is aware of but consciously disregards a substantial and unjustifiable risk" that a particular result will follow his conduct, and the risk is so great "that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint." Id. § 39-11-302(c).

Dobson and Rance do not challenge the sufficiency of the evidence for any of these elements. Rather, they maintain that the evidence was insufficient to prove that they were the individuals who committed this offense against B. M. The State relies on the theory of criminal responsibility to support the Defendants' convictions.

An individual is criminally responsible for the conduct of another person if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." T.C.A. § 39-11-402(2) (2003). Criminal responsibility is not a distinct crime but "a theory by which the state may prove the defendant's guilt based upon another person's conduct." State v. Osborne, 251 S.W.3d 1, 16 (Tenn. Crim. App. 2007) (citing State v. Mickens, 123 S.W.3d 355, 389-90 (Tenn. Crim. App. 2003)). In the theory of criminal responsibility, "an individual's presence and companionship with the perpetrator of a felony before and after the commission of an offense are circumstances from which his or her participation in the crime can be inferred." State v. Watson, 227 S.W.3d 622, 639 (Tenn. Crim. App. 2006) (citing State v. Ball, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998)). In this situation, "no particular act need be shown, and the defendant need not have taken a physical part in the crime to be held criminally responsible." Id. (citing Ball, 973 S.W.2d at 293)). In order to be held criminally responsible for the acts of another, the defendant must "'in some way associate himself with the venture, act with the knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree.'" Hembree v. State, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976) (quoting Jenkins v. State, 509 S.W.2d 240, 245 (Tenn. Crim. App. 1974)). Additionally, there is no requirement that the State "elect between prosecution as a principal actor and prosecution for criminal responsibility." State v. Hodges, 7 S.W.3d 609, 625 (Tenn. Crim. App. 1998) (citing State v. Williams, 920 S.W.2d 247, 257-58 (Tenn. Crim. App. 1995)).

Here, the evidence is sufficient to support the convictions for reckless aggravated assault. Bradford testified that Dobson and Rance were among the six men outside his house. B. M. testified that she saw all six of the men throwing bricks. One brick hit B. M. on the leg as she sought the shelter of a closet. Additionally, the Defendants were with the

group both before this occurred, when Rance tried to punch Bradford at the store, and after, as the men broke through Bradford's front door. From this evidence, the jury could have inferred that Dobson and Rance participated in the crime or at least associated with the venture and acted with the requisite knowledge and criminal intent to commit the crime. The evidence was sufficient, therefore, to support the convictions based on the Defendants' criminal responsibility for the reckless aggravated assault of B. M.

In sum, after reviewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found all the elements of both attempted second degree murder and reckless aggravated assault beyond a reasonable doubt. Dobson and Rance are not entitled to relief.

## CONCLUSION

Upon review, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE