IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 19, 2018 Session

## STATE OF TENNESSEE v. TAMMY TUTTLE

**Appeal from the Circuit Court for Maury County**
**No. 23036     Stella L. Hargrove, Judge**

_____

## No. M2017-00788-CCA-R3-CD

_____

Defendant, Tammy Tuttle, appeals her convictions of possession of not less than 14.175 grams (0.5 ounces) but not more than ten pounds of marijuana with the intent to sell and possession of 0.5 grams or more of cocaine with the intent to sell as well as the forfeiture of $1,098,050 in United States currency. The trial court sentenced Defendant to an effective eight year sentence to serve. On appeal, Defendant argues that the evidence is insufficient to sustain her convictions and that the trial court erred in ruling that the $1,098,050 was forfeited to the State. After a thorough review of the record, we hold that the evidence is sufficient for Defendant's convictions and that we do not have jurisdiction to hear the forfeiture issue because the notice of appeal was untimely. Accordingly, we affirm the judgments of the trial court but remand for entry of corrected judgments in Counts Three and Four.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

John S. Colley III, Columbia, Tennessee, for the appellant, Tammy Ann Tuttle.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; and Brent Cooper, District Attorney General[1], for the appellee, State of Tennessee.

_____

[1] At the time of trial, District Attorney General Cooper was the Assistant District Attorney General who prosecuted the case.

# OPINION

## *Factual and Procedural History*

On April 24, 2012, police officers searched Defendant's home and property simultaneously with two other residences in Tennessee during the investigation of an illegal drug operation spearheaded by Christopher Tuttle, Defendant's step-son. Officer Bucky Rowland of the Maury County Sheriff's Department Narcotics Unit knocked on the door and announced the police's presence. Jerry Tuttle, Defendant's husband, opened the door and let Officer Rowland inside. A different officer stayed with Mr. Tuttle as Officer Rowland cleared the rest of the house. Officer Rowland found Defendant in the master bedroom, where she appeared to have been sleeping. He allowed Defendant to put on some clothes, and then he escorted her to the living room of the house. Next, a search of the interior of the house commenced.

Officers found two handguns in the living room around the vicinity of the couch, an unloaded 9 millimeter handgun and a loaded .45 caliber pistol. A loaded .44 magnum revolver was found between the mattress and the box spring of the bed in the master bedroom, on which Defendant had been sleeping. Officers recovered multiple rifles, a shotgun, and a loaded magazine for a semi-automatic rifle from the master bedroom. Two "black powder" rifles and another bolt-action rifle were found in the Tuttle residence. In total, officers searching the Tuttle property located eleven firearms inside the residence and eleven firearms outside of the residence.

A search of the kitchen in Defendant's house revealed "a baggie of white powder" and "a baggie containing a white residue" on the shelf above of the refrigerator. In the living room area of the house, officers found a bag of cocaine inside the top drawer of a roll-top desk. In a different drawer of the same desk, a small electronic scale and a bag of marijuana were discovered. A white residue remained on the surface of the electronic scale. Officer Adrian Breedlove, a Task Force Officer with the Drug Enforcement Administration, testified that the scale was an accurate way to measure small amounts of various substances. Officers came upon small bags of marijuana throughout the Tuttle residence, and more than one of those bags were found in the master bedroom. In the closet of the master bedroom, officers spotted a larger set of digital scales and multiple bags of loose marijuana. Officers also retrieved a "brick" of compressed marijuana from the closet. According to Officer Breedlove, the bags of marijuana were "semi-processed," which indicates that the marijuana in the bags originated from a compressed "brick." In the midst of a pile of women's clothing located in the master bedroom, officers found cocaine wrapped in tissue paper. Another bag of cocaine was located in the top drawer of a dresser in the master bedroom. Officers also found a marijuana grinder and a pipe. Inside a Tennessee Titan's clutch purse, officers found marijuana "roaches," marijuana seeds, remnants of rolling papers, and a smoking pipe. In the

bottom of a chest of drawers, officers found $75,700 in cash. In the closet, there was $22,050 in the pocket of a jacket. A brand new, unused "Fraud Fighter FF1000 money counter" was also found in the master bedroom.

A Honda Civic was parked in the front yard. The trunk of the car was open and contained a large ammunition can, a square plastic bucket, and three gun cases. Inside the ammunition can was a black plastic bag filled with $1,000,300 in cash. The square bucket contained eight pistols. Each of the three gun cases contained a pistol. Ammunition of various calibers was in the trunk as well.

Officer William Doley of the Maury County Sheriff's Department sent the substances recovered from the Tuttle property to the Tennessee Bureau of Investigation crime lab for testing. Analysis of the substances revealed that there were 1,235.3 grams of marijuana and 12.4 grams of cocaine. A substance appearing to be more marijuana was recovered from the Tuttle residence, but it was not tested.

On cross-examination, Officer Breedlove admitted that he had testified previously that he believed the cocaine in Defendant's house had been for personal use. However, Officer Breedlove recanted that testimony and said that his opinion had changed and that he now believed the drugs in the house were for resale after reviewing the evidence. Officer Breedlove agreed that the marijuana and cocaine were not packaged in small, uniform amounts. Officer Doley noted that he saw no items that would indicate cocaine use in Defendant's house.

Officer Doley also reviewed Defendant's income tax forms. During 2007, Defendant reported that she earned $15,075. Jerry Tuttle reported a net loss of income for that year. For 2008, Defendant earned $15,427 and Jerry Tuttle earned $1,613. Officer Doley found no income tax returns more recent than 2008.

As a result of the drugs, firearms, and cash recovered from the search, a Maury County Grand Jury indicted Defendant three separate times. In case number 21696, a Maury County Grand Jury first indicted Defendant for possession of more than 0.5 grams of cocaine with the intent to sell and possession of more than ten pounds of marijuana with the intent to sell.

In case number 22092, a Maury County Grand Jury Indicted Defendant for conspiracy to possess over 300 pounds of marijuana with the intent to sell or deliver the marijuana in a drug free zone in Count One; conspiracy to commit money laundering in Count Two; money laundering in Count Three; possession of a firearm during the commission of a dangerous felony in Count Four; and judicial forfeiture of $1,098,050 of United States currency and other items of personal property in Count Five. Later, the State entered a nolle prosequi on Counts One, Two, Three, and Four of case number

- 3 -

22092. On February 4, 2014, the trial court entered an order (hereinafter the "February 4th Order") disposing of Count Five of case number 22092 as follows:

> Upon agreement of the parties, all property set forth in Count 5 of the Indictment in Case #22092 is disposed of in accordance with the Court's previous Order of Delegation and Forfeiture and Order Denying Forfeiture in *State v. Jerry Tuttle*, Maury Circuit #22091. These Defendants and the State of Tennessee hereby waive their respective rights to appeal this disposition, with the lone exception of the $1,098,050.00 in U.S. currency taken from the Tuttles.

Next, a Maury County Grand Jury indicted Defendant in case number 23036, superseding case number 21696, for possession of not less than 14.175 grams (0.5 ounces) but not more than ten pounds of marijuana with the intent to sell in Count One; possession of 0.5 grams or more of cocaine with the intent to sell in Count Two; possession of numerous firearms with the intent to go armed during the commission of or escape from the dangerous offense of possession of marijuana with the intent to sell in Count Three; and possession of numerous firearms with the intent to go armed during the commission of or escape from the dangerous offense of possession of more than 0.5 grams of cocaine with the intent to sell in Count Four. After the trial court denied a motion to amend the indictment and a motion to nolle prosequi, the trial court granted the State's motion to consolidate offenses from case numbers 21696, 22092, and 23036.

Based upon the above stated facts, a jury found Defendant guilty in Counts One, Two, Three, and Four of case number 23036. Defendant filed a motion for new trial, and the trial court vacated Defendant's convictions in Counts Three and Four of case number 23036. However, the trial court denied Defendant's motion for new trial on Counts One and Two of case number 23036 and Count Five of case number 22092. This appeal followed.

*Analysis*

*I. Sufficiency of the Evidence*

Defendant concedes in her brief that the evidence admitted at trial was sufficient to sustain a conviction for simple possession of both the marijuana and the cocaine found in the residence, but Defendant contends that the evidence admitted at trial was insufficient to prove that she had the intent to sell the marijuana or cocaine. The State responds that the evidence is sufficient to support Defendant's convictions through a theory of criminal responsibility. We agree with the State.

- 4 -

Well-settled principles guide this Court's review when a defendant challenges the sufficiency of the evidence. A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). "In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citing *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973)). We may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *Dorantes*, 331 S.W.3d at 379 (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

"A person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." T.C.A. § 39-11-401(a). "A person is criminally responsible for the offense committed by the conduct of another, if . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]" T.C.A. § 39-11-402(2). Mere presence during the commission of a crime is not enough to support a conviction, but presence and companionship with the perpetrator of the crime before and after the offense was committed are circumstances from which a defendant's participation in the crime may be inferred. *State v. Ball*, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). While mere presence is not enough, mere encouragement is sufficient. *Id.* (citing *State v. McBee*, 644 S.W.2d 425, 428 (Tenn. Crim. App. 1982)). It must be proven that a defendant associated with the venture, acted with knowledge that the offense was going to be committed, and shared the criminal intent of the principal. *State v. Macy*, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (citing *Hembree v. State*, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976)).

"It is an offense for a defendant to knowingly . . . possess a controlled substance with intent to manufacture, deliver, or sell the controlled substance." T.C.A. § 39-17-417(a)(4). Possessing 0.5 grams or more of cocaine, a Schedule II controlled substance, with the requisite intent is a Class B felony. T.C.A. § 39-17-417(b)(1). Possessing not less than 14.175 grams but not more than 4535 grams of marijuana, a Schedule VI controlled substance, with the requisite intent is a Class E felony. T.C.A. § 39-17-417(g)(1). Possession may be actual or constructive. If possession is deemed to be constructive, there must be proof that the accused had "'the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others.'" *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013) (quoting *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001)) (internal citations omitted).

The evidence adduced at trial shows that Defendant's house contained two sets of scales, marijuana that was still compressed in a brick, cocaine contained in "baggies," large amounts of cash, an electronic money counter, and multiple guns. Officers found Defendant in the master bedroom. One set of scales and the brick of marijuana were found in the closet of the master bedroom. The other set of scales, which had white residue on it, was found in a desk with a "baggie" of cocaine. Defendant and her husband had a combined annual income of less than $20,000 listed on their tax returns, but $97,750 in cash was found in the house. Defendant does not contest that she possessed the amounts of marijuana and cocaine that are the subject of her convictions, and Defendant was in constructive possession of two sets of scales, a large amount of cash, and an electronic money counter. A reasonable juror could infer that Defendant intended to use the scales to measure quantities of marijuana and cocaine, sell the marijuana and cocaine, and stow the money away in various places in the house. Even if Defendant was not the person carrying out the drug transactions, a reasonable juror could find that Defendant was criminally responsible for the actions of her husband because she was either personally involved in or benefitted from the drug transactions with the intent to promote or assist in the commission of the offenses. Defendant's involvement and benefit is illustrated by her admitted possession of the marijuana and cocaine, her ownership of the house where the drugs and money were found, and her constructive possession of the sets of scales, a large amount cash, and the electronic money counter. Thus, the evidence is sufficient to support her convictions in Counts One and Two of case number 23036.

## II. Forfeiture

"Forfeiture is defined as '[t]he divestiture of property without compensation.'" *State v. Sprunger*, 458 S.W.3d 482, 492 (Tenn. 2015) (quoting Black's Law Dictionary 722 (9th ed. 2009) (Forfeiture)). Forfeiture proceedings often coincide with criminal charges. *State v. Jerry Lewis Tuttle*, 515 S.W.3d 282, 320 (Tenn. 2017). "But forfeiture proceedings are not criminal in nature and are instead *in rem* actions—actions regarding

the seized property for which forfeiture is sought." *Id.* Accordingly, forfeiture actions are civil in nature, and this is evidenced by the lower standard of proof in forfeiture actions. *See id.* (citing T.C.A. § 39-11-708(d) and *Stuart v. State Dep't of Safety*, 963 S.W.2d 28, 33 (Tenn. 1998)). "Tennessee Rule of Appellate Procedure 4(a) requires that a notice of appeal be filed 'within 30 days after the date of entry of the judgment appealed from.'" *In re Gary's Bonding Co.*, No. M2011-00430-CCA-R3-CD, 2011 WL 4529645 at *2 (Tenn. Crim. App. 2011), *no perm. app. filed*. The time requirement for a notice of appeal is jurisdictional in civil actions and may only be tolled by the filing of specific motions listed in Tennessee Rule of Appellate Procedure 4(b). *Id.* The provision of Tennessee Rule of Appellate Procedure 4(a) which states that timely notice of appeal is not jurisdictional in "criminal cases" does not apply to forfeiture because it is a civil action. *See State v. Michael N. Allen*, No. E2004-00292-CCA-R3-CD, 2004 WL 2108232, at *2 (Tenn. Crim. App. Sept. 22, 2004), *perm. app. denied* (Tenn. Jan. 31, 2005).

In the February 4th Order, the trial court acted "[u]pon the agreement of the parties" and disposed of "all property" set forth in Count Five of the indictment in "Case #22092" in accordance with the trial court's previous "Order of Delegation and Forfeiture and Order Denying Forfeiture" entered on the same day in "*State v. Jerry Tuttle*, Maury Circuit #22091." In the February 4th Order, the trial court noted that both Jerry Tuttle and Defendant waived their right to appeal the order, "with the lone exception of the $1,098,050.00 in U.S. currency taken from the Tuttles." The "Order of Delegation and Forfeiture" in case number 22091, which was incorporated by reference in the February 4th order, states that "Jerry Tuttle's interest in the following property be and is hereby forfeited to the State of Tennessee: . . . $1,098,050 in U.S. Currency taken from Tuttles' residence at 4571 Dugger Road." We view the February 4th Order in this case as a final judgment on Count Five of the indictment in case number 22092 that forfeits Defendant's interest in the $1,098,050 in U.S. currency taken from the Tuttles' residence. Our view is further supported by a joint motion filed by Defendant and Jerry Tuttle to enforce the trial court's February 4th Order in this case that characterized the order as "the settlement agreement approved by [the trial] court" and stated "[t]hat Order disposed of the property seized from the Tuttles as set forth in the Court's Order of Forfeiture and Delegation and Order Denying Forfeiture, also entered February 4, 2014." If the February 4th Order was not the final judgment on Count Five, then no other order or judgment disposing of Count Five of case number 22092 is in the appellate record. Defendant bears the burden of providing an adequate record, and failure to provide an adequate record for a determination results in waiver of the issue. *See State v. Thompson*, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000).

Because the February 4th Order is the final judgment on Count Five of the indictment in case number 22092, Defendant had until March 6, 2014, to file a timely notice of appeal. Defendant's notice of appeal in case number 22092 was filed April 18,

2017.  It was filed over three years late.  Given that forfeiture is a civil action, we have no jurisdiction to hear Defendant's appeal on this issue.

*Conclusion*

For the aforementioned reasons, the judgments of the trial court are affirmed.  However, the appellate record does not contain individual judgments for Counts Three and Four reflecting that those counts were vacated by the trial court.  Thus, we remand for entry of corrected judgments in Counts Three and Four in accordance with Tennessee Supreme Court Rule 17.

_____
TIMOTHY L. EASTER, JUDGE