IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs October 30, 2018

**STATE OF TENNESSEE v. JAMIE C. MOORE**

**Appeal from the Criminal Court for Knox County
No. 103288B G. Scott Green, Judge**

_____

**No. E2018-00294-CCA-R3-CD**

_____

Defendant, Jamie C. Moore, appeals his convictions for possession with intent to sell and deliver more than .5 grams of cocaine and possession of a firearm with the intent to go armed during the commission of a dangerous felony. In his appeal, he contends that the evidence is insufficient to support his convictions under a theory of criminal responsibility because he did not benefit from the proceeds of the drug sales. After a review, we conclude that Defendant received a benefit when he received drugs for his personal use. Therefore, we affirm the judgments of the trial court but remand for entry of a corrected judgment document for Count Two reflecting its merger with Count One.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed
and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

J. Liddell Kirk (on appeal) and Mitchell T. Harper (at trial) Knoxville, Tennessee, for the appellant, Jamie C. Moore.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Charme Allen, District Attorney General; and Ta Kisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Knox County grand jury indicted Defendant, along with Co-Defendant Eric Eugene Pollock, for possession with intent to sell more than .5 grams of cocaine, possession with intent to deliver more than .5 grams of cocaine, possession of a firearm

with the intent to go armed during the commission of a dangerous felony, simple possession of marijuana, and possession of drug paraphernalia. The following narrative is derived from the facts adduced at trial.

Officer Terry Pate of the Knoxville Police Department used confidential informants to purchase drugs on two occasions at Defendant's residence. Pursuant to general police procedure, the confidential informants and their vehicles were searched, they were provided with money, which had been photocopied by police, and they were under constant police surveillance. At different times, each confidential informant entered Defendant's residence and returned with crack cocaine. As a result of these two purchases by confidential informants, Officer Pate obtained a search warrant for Defendant's residence.

Officer Pate and his fellow police officers executed the search warrant on July 24, 2013. A SWAT team entered Defendant's residence and detained everyone inside. Once the residence was secured, the police began photographing the locations of each individual and searching the individuals named in the search warrant. Then, the police removed all persons from the premises and began to photograph and search the residence. Any items of interest were photographed and confiscated. At trial, eighty-two photographs from Defendant's residence were introduced. Some of the photographs depicted Defendant and three other individuals inside the house. One photograph depicted a loaded firearm lying on the arm of a chair. A photograph of the area beneath a couch depicted a loaded revolver, a plate with what appeared to be cocaine residue and a razor blade lying on it, and a wallet containing Defendant's government issued identification. Various photographs depicted what appeared to be loose marijuana on top of a DVD case for *Tyler Perry's Temptation*, a bag of what appeared to be marijuana on the kitchen counter, a bag of what appeared to be marijuana in the kitchen sink, a bag of what appeared to be marijuana in the living room, a marijuana grinder, homemade bongs, a box of razor blades in a drawer in the kitchen, a box of razor blades in a closet, a pill bottle containing what appeared to be crack cocaine on the kitchen table, what appeared to be cocaine residue on a plate sitting on the coffee table, a bag of what appeared to be cocaine in a bedroom, a cigarette pack containing a crack pipe, and digital scales.

At the residence, the police weighed the substances that they recovered. Four different amounts of the substance believed to be marijuana weighed 3.56 grams, 2.92 grams, .79 grams, and 2.01 grams. Two different amounts of the substance believed to be crack cocaine weighed 2.61 grams and 6.41 grams. Agent Clayton Hall of the Tennessee Bureau of Investigation Crime Laboratory analyzed .68 grams of green plant material and concluded that it was marijuana. The gross weight of the additional, untested plant

material was 7.39 grams.[1]  Agent Hall removed a white, rock-like substance from the pill bottle collected from Defendant's residence, and his test revealed that it was 2.22 grams of cocaine base.  Agent Hall tested another white, rock-like substance recovered from Defendant's residence and determined that it was 6.15 grams of cocaine base.

Officer Pate interviewed Defendant, and Defendant admitted that the revolver found under the couch belonged to him.  Further, Defendant said that Eric Pollock was allowed to sell cocaine from Defendant's residence, and Defendant received cocaine in return.

After hearing the proof, the jury convicted Defendant as charged.  Defendant's convictions for possession with intent to sell cocaine in Count One and possession with intent to deliver cocaine in Count Two were merged by the trial court.  The trial court sentenced Defendant to ten years for his conviction in Count One.  Consecutive to his ten-year sentence, Defendant received a three-year sentence for his conviction for possession of a firearm.  Also, Defendant received separate sentences of eleven months and twenty-nine days for his convictions for simple possession of marijuana and possession of drug paraphernalia, to be served concurrently with his ten-year sentence for Count One.  Defendant's total effective sentence is thirteen years.  After the trial court denied Defendant's motion for new trial, Defendant filed this timely appeal.

*Analysis*

Defendant challenges the sufficiency of his conviction for possession with intent to sell, arguing that he did not promote or assist the commission of the offense and that he did not benefit in the proceeds of the offense because he only received drugs for personal use, not cash.  Defendant also argues that the evidence is insufficient to support his conviction for possession of a firearm during the commission of a dangerous felony because the evidence is insufficient for the underlying felony, the aforementioned possession with intent to sell conviction.[2]  The State responds that the evidence sufficiently shows that Defendant associated himself with Mr. Pollock's drug venture by allowing Mr. Pollock to sell drugs from Defendant's home and that Defendant received drugs as a benefit of that association.  We agree with the State.

---

[1] Agent Hall explained that, pursuant to the Tennessee Bureau of Investigation's backlog reduction policy, he did not test the remaining plant material because its weight was not enough to enhance the offense with which the Defendant could be charged.

[2] Defendant concedes that the evidence was sufficient to support his convictions for simple possession and possession of drug paraphernalia.

Well-settled principles guide this Court's review when a defendant challenges the sufficiency of the evidence. A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). "In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citing *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973)). We may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *Dorantes*, 331 S.W.3d at 379 (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

"A person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." T.C.A. § 39-11-401(a). "A person is criminally responsible for the offense committed by the conduct of another, if . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]" T.C.A. § 39-11-402(2). Mere presence during the commission of a crime is not enough to support a conviction, but presence and companionship with the perpetrator of the crime before and after the offense was committed are circumstances from which a defendant's participation in the crime may be inferred. *State v. Ball*, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). While mere presence is not enough, mere encouragement is sufficient. *Id.* (citing *State v. McBee*, 644 S.W.2d 425, 428 (Tenn. Crim. App. 1982)). It must be proven that a defendant associated with the venture, acted with knowledge that the offense was going to be committed, and shared the criminal intent of the principal. *State v. Macy*, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (citing *Hembree v. State*, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976)).

"It is an offense for a defendant to knowingly . . . possess a controlled substance with intent to manufacture, deliver, or sell the controlled substance." T.C.A. § 39-17-417(a)(4). Possessing 0.5 grams or more of cocaine, a Schedule II controlled substance, with the requisite intent is a Class B felony. T.C.A. § 39-17-417(c)(1). Possession may be actual or constructive. If possession is deemed to be constructive, there must be proof that the accused had "'the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others.'" *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013) (quoting *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001)) (internal citations omitted). "[T]he trier of fact may infer from the amount of the drugs, along with relevant facts surrounding the arrest, that the drugs were possessed for the purpose of selling them." *State v. Nelson*, 275 S.W.3d 851, 866 (Tenn. 2008) (citing T.C.A. § 39-17-419).

"It is an offense to possess a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony." T.C.A. § 39-17-1324(a). Possession of a controlled substance with the intent to sell, manufacture, or distribute the substance is a dangerous felony. T.C.A. § 39-17-1324(i)(1)(L).

Viewed in a light most favorable to the State, the facts indicate that Defendant admitted in his statement to the police that he allowed Mr. Pollock to sell drugs out of Defendant's house in exchange for Mr. Pollock's giving Defendant drugs for his personal use. Mr. Pollock's drug operation was evidenced by the 8.37 grams of cocaine, large quantities of razor blades, and digital scales recovered from Defendant's house. Further, Defendant's personal use of cocaine was evidenced by the plates on the coffee table and under the couch, which appeared to contain cocaine residue and had a razor blade lying on it. The plate under the couch was in close proximity to Defendant's wallet and revolver. A rational juror could conclude beyond a reasonable doubt that Defendant aided Mr. Pollock by allowing his house to be used as the location for the drug venture and that Defendant intended to benefit from providing this aid by receiving drugs for his personal use. Thus, the evidence is sufficient to support Defendant's conviction for possession with intent to sell more than .5 grams of cocaine. Because the evidence is sufficient for the underlying felony, a rational juror could find beyond a reasonable doubt that Defendant possessed a firearm during the course of a dangerous felony because Defendant admitted that the revolver found under the couch belonged to him.

*Conclusion*

For the aforementioned reasons, the judgment of the trial court is affirmed. However, the appellate record does not contain a judgment document for Count Two,

which merged with Count One.  Thus, we remand for entry of a judgment document in Count Two in accordance with *State v. Berry*, 503 S.W.3d 360, 364 (Tenn. 2015).


_____
TIMOTHY L. EASTER, JUDGE